# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNE M. CULLA,<br><br>                    Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>                    Defendant. | ) 1:04-cv-06056-SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (DOC. 1)<br>)<br>) ORDER DIRECTING THE ENTRY OF<br>) JUDGMENT FOR DEFENDANT JO ANNE B.<br>) BARNHART, COMMISSIONER OF SOCIAL<br>) SECURITY, AND AGAINST PLAINTIFF<br>) LYNNE M. CULLA<br>)<br>) |

    Plaintiff is proceeding with counsel against the
Commissioner of Social Security. Plaintiff seeks judicial review
of a final decision of the Commissioner denying an application
for Supplemental Security Income (SSI) benefits under Title XVI
of the Social Security Act (the Act). Pursuant to 28 U.S.C. §
636(c)(1), the parties have consented to the jurisdiction of the
Magistrate Judge to conduct all proceedings in this matter,
including ordering the entry of final judgment.[1] The matter is
currently before the Court on the parties' briefs, which have

---

[1] Judge Anthony W. Ishii ordered the case reassigned to the undersigned Magistrate Judge on December 3, 2004.

been submitted without oral argument to the Honorable Sandra M.
Snyder, United States Magistrate Judge.

PRIOR PROCEEDINGS

On August 29, 2002, Plaintiff applied for Supplemental
Security Income (SSI), alleging disability since February 2,
1991, due to a blood disorder, degenerative disc disease, and
back pain. (Tr. 89-92, 114-23.) Plaintiff's claim was denied
initially and on reconsideration. (Id. at 61-70.) Plaintiff
requested a hearing before an administrative law judge (ALJ) of
the Social Security Administration (SSA). On April 1, 2004,
Plaintiff appeared with an attorney and testified before the ALJ,
James E. Ross. (Tr. 12.) On April 29, 2004, the ALJ denied
Plaintiff's application for benefits. (Id. at 12-20.) Plaintiff
appealed the ALJ's decision to the Appeals Council. On June 23,
2004, the Appeals Council denied Plaintiff's request for review.
(Id. at 5-7.)

On August 5, 2004, Plaintiff filed the complaint in the
instant action; the administrative record was lodged by Defendant
on November 30, 2004. On April 27, 2005, Plaintiff filed an
opening brief. On May 25, 2005, Defendant filed a brief in
opposition.

ADMINISTRATIVE FINDINGS

The ALJ found that Plaintiff had a severe impairment of
chronic low back pain, status post 1997 surgery; she had a
history of carpal tunnel syndrome (CTS), status post surgery on
the right wrist in March 2001, and asymptomatic hepatitis C and
HTLV2+. These impairments did not meet or medically equal listed
impairments. Plaintiff had the residual functional capacity (RFC)

to lift and carry twenty pounds occasionally and ten pounds
frequently; sit, stand, or walk six hours each in an eight-hour
day; and occasionally stoop and climb. Plaintiff could perform
her past relevant work of food or deli clerk as generally
performed in the economy. Alternatively, Plaintiff was a younger
individual with the equivalent of a high school education and had
completed some college courses, with no transferable skills, and
the RFC to perform substantially all of the full range of light
work, and thus using Rule 202.20 or 202.21, Appendix 2, Subpart
P, Regulations Number 4 as a framework for decision-making,
Plaintiff was not disabled. (Tr. 19-20.)

<u>ISSUES PRESENTED</u>

Plaintiff challenges the ALJ's findings regarding her
subjective complaints of pain, his determination that her
bilateral CTS was non-severe, and his weighing of the treating
physician's opinion.

<u>FACTS</u>

Neither party sets forth a complete statement of the
pertinent facts in the briefs. In this regard, the parties are in
violation of the Court's scheduling order. Defendant merely
states that she is willing to stipulate that the ALJ fairly and
accurately summarized the medical evidence and testimony in his
decision, but no stipulation has been forthcoming, and no
stipulated statement of facts was ever set forth by Defendant.
Because of this, no effort will be made by the Court to summarize
the facts beyond Plaintiff's statement; pertinent facts will be
referred to in the Court's analysis.

Plaintiff states:

1    Claimant, LYNNE M. CULLA, born on July 29, 1954, was 49

2  years old on the date of her hearing and alleged that her

3  disability began on February 2, 1991. (CT 13.) During her past

4  relevant work history, claimant has been employed as a deli food

5  clerk. (CT 13.) Claimant's disability is based on a combination

6  of impairments that include a failed back surgery, degenerative

7  disc disease, HTLV 1 and 2, lymphoma virus and hepatitis C. (CT

8  13.) Moreover, claimant has also been diagnosed with bilateral

9  carpal tunnel syndrome with a prior surgery to her right upper

10  extremity. (CT 13.) Claimant is an individual with an equivalent

11  high school education and has taken some additional college

12  courses. (CT 13.)

13                    SCOPE AND STANDARD OF REVIEW

14    Congress has provided a limited scope of judicial review of

15  the Commissioner's decision to deny benefits under the Act. In

16  reviewing findings of fact with respect to such determinations,

17  the Court must determine whether the decision of the Commissioner

18  is supported by substantial evidence. 42 U.S.C. § 405(g).

19  Substantial evidence means "more than a mere scintilla,"

20  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

21  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

22  (9th Cir. 1975). It is "such relevant evidence as a reasonable

23  mind might accept as adequate to support a conclusion."

24  Richardson, 402 U.S. at 401. The Court must consider the record

25  as a whole, weighing both the evidence that supports and the

26  evidence that detracts from the Commissioner's conclusion; it may

27  not simply isolate a portion of evidence that supports the

28  decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

                                 4

1   It is immaterial that the evidence would support a finding

2   contrary to that reached by the Commissioner; the determination

3   of the Commissioner as to a factual matter will stand if

4   supported by substantial evidence because it is the

5   Commissioner's job, and not the Court's, to resolve conflicts in

6   the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

7   Cir. 1975).

8        In weighing the evidence and making findings, the

9   Commissioner must apply the proper legal standards. Burkhart v.

10  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

11  review the whole record and uphold the Commissioner's

12  determination that the claimant is not disabled if the

13  Commissioner applied the proper legal standards, and if the

14  Commissioner's findings are supported by substantial evidence.

15  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

16  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

17  the Court concludes that the ALJ did not use the proper legal

18  standard, the matter will be remanded to permit application of

19  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

20  Cir. 1987).

21                          ANALYSIS

22      I. Disability

23       In order to qualify for benefits, a claimant must establish

24  that she is unable to engage in substantial gainful activity due

25  to a medically determinable physical or mental impairment which

26  has lasted or can be expected to last for a continuous period of

27  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

28  claimant must demonstrate a physical or mental impairment of such

severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual

functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

## II. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ's findings regarding her subjective complaints were not supported by substantial evidence in light of evidence in the record indicating that Plaintiff had undergone several modalities for pain treatment, including multiple epidural injections and strong narcotic medications, and that functional restrictions had been assessed by her treating physicians.

### A. Legal Standard

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not

credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

Plaintiff argues that the ALJ failed to state a sufficient reason for rejecting her claim of pain because of evidence in the record supporting her complaints.

B. Evidence upon Which Plaintiff Relies

Plaintiff points to a letter dated July 3, 2002, from her

8

treating doctor, Juliane Tran, of the CBCC Pain Medicine and
Surgery Center, directed to whom it might concern, requesting
that Plaintiff be considered for disability benefits of medical
assistance programs. (Tr. 221, 260.) The letter noted that
Plaintiff had been seen since February 27, 2000, for severe back
pain that radiated down to both posterior thighs and buttocks;
and it referred to her history of a previously right-sided
laminectomy at L4-L5, a CT scan of the lumbar spine taken on
February 28, 2000, showing mild to moderate canal stenosis and
bilateral foraminal stenosis at L4-L5, and epidural injections
and strong medication to relieve her pain.

Evidence from her treating physician substantiated a long-
standing claim of chronic back pain treated with pain medication
and occasional steroid injections. Reference to the report and
notes of February 28, April 27, and July 14, 2000, of Plaintiff's
treating physician shows that although there was minimal
tenderness along the lumbar spine, gait was stable, she could
perform heel and toe walking, anterior flexion was to ninety
degrees, straight leg raising tests were negative up to forty-
five degrees bilaterally, and lower extremities had full range of
motion, sensation, and 5/5 muscle strength. (Tr. 181-2, 186-88.)
In March and April 2000, Plaintiff received steroid injections.
(Tr. 184-85.) In November 2000 Norco and Soma were continued upon
findings of flexion to 90 degrees, straight leg raising negative
to sixty degrees bilaterally, sensation intact to pinprick in the
bilateral lower extremities, strength 5/5 bilaterally, and only
mild tenderness of the lumbosacral spine and lumbar paravertebral
musculature bilaterally. (Tr. 175-76.)

Plaintiff received a series of injections of steroids in February and March 2001, with accompanying recommendations to exercise her lower body daily, that gave mild temporary relief, and she took Soma and Norco. (Tr. 265, 264.) In April 2001, Dr. Dinh examined her and found straight leg raising positive to 45 degree bilaterally, but motor strength was 5/5 at the bilateral ankles; he advised physical therapy for her low back pain and participation in physical activity as tolerated. (Tr. 263.) In July 2001 her lower back pain had been exacerbated by a long car ride; she admitted using more Norco than had been prescribed for a few days; her gait and heel and toe walk were stable and without difficulty; motor strength was 5/5 at the bilateral knees with flexion and extension. (Tr. 262.) In August 2001 she continued with reduced anterior flexion of the lumbar spine, positive straight leg raising, but sensation to pinprick in the bilateral lower extremities was intact in the L4, L5, and S1 dermatomes; motor strength was 5/5 with resisted flexion and extension of the bilateral knees; and she continued to take more than her prescribed pain medication due to claims of pain. (Tr. 261.) In September 2001 she complained of continuing, severe pain in the low back only mildly relieved by medication; her gait was suitable, her anterior flexion of the lumbar spine was to ninety degrees and produced low back pain, straight leg raising was negative to sixty degrees bilaterally, sensation to pinprick was intact, and motor strength was 5/5 at the bilateral knees with resisted flexion and extension and deep tendon reflexes of 2+ at bilateral knees and ankles; there was tenderness to palpation at the lower lumbar spine. Medications of Neurontin, Norco, and Soma

were continued. (Tr. 233.)

In July 2002, she reported pain radiating to the buttocks and thighs and requested a letter. She reported that her medication reduced the pain from 10/10 to 7/10, and the lumbar epidural injection helped relieve the pain fifty per cent. Range of motion of the lumbar spine for flexion was seventy degrees, limited by pain; simultaneous lumbar extension and rotation to the right produced minimal pain, with tenderness to palpation in the L3 through L5 area. Her pain medication was continued because it gave fair control; when her insurance was available, it was planned to schedule her for further injection when the pain was exacerbated. (Tr. 232.) In October 2002, she received another injection after complaining of groin pain in addition to back pain. (258-59.) She complained of increased pain in November 2002, but the only noted symptom was tenderness to palpation along the left side of the lumbar laminectomy surgical scar. It was noted that her medications, MS Contin and Soma, gave her good pain relief, and so they were continued. (Tr. 257.)

On January 27, 2003, Dr. Tomas B. Rios performed a comprehensive internal medicine examination. Plaintiff complained of a chronic back problem that did not improve following surgery. Medications (morphine sulfate and Soma) were her only treatment. Plaintiff reported that she drove a vehicle and was independent in her activities of daily living. Her gait was normal. Romberg's was negative without sway, and tandem walk and heel-toe walk were normal; no assistive device was used. Her dorsolumbar forward flexion was limited to seventy degrees, extension ten degrees, and lateral flexion ten degrees. Straight leg raising was

11

accomplished at eighty degrees bilaterally without pain. There
was some tenderness on palpatory exploration of the back, but a
provocative maneuver was negative for nerve root irritation.
Neurological examination revealed no focal motor or sensory
deficit. Bulk and tone of upper and lower extremities were
symmetric and normal, grip strength bilaterally was strong and
normal, and preserved motor strength of all extremities was 5/5.
There were no focal sensory deficits. The assessment was chronic
back pain, status post back surgery, with some restricted lumbar
flexion/extension maneuvers and some tenderness on palpatory
examination. Dr. Rios's RFC precluded her from activities that
required frequent bending and stooping, or very heavy lifting
beyond fifty pounds occasionally or twenty-five pounds
frequently. (Tr. 247-50.)

In January 2003, a scan of her lumbar spine revealed
degenerative changes of the lower thoracic and lumbar spine,
vertebral bodies normal in height, with disc space narrowing only
at T10-11, T11-12, T12-L1, L4-5, and L5-S1, with anterior
osteophyte formation at each of the those levels. (Tr. 251.) In
March 2003, Dr. Patel at the CBCC Pain Medicine and Surgery
Center continued Plaintiff's medications because they gave her
good relief of pain; the only symptom noted was tenderness along
the lower lumbar and sacral area; however, muscle strength was
5/5 in the lower extremities. (Tr. 256.)

On March 25, 2004, her treating physician noted that
Plaintiff reported that her pain was 6/10 in intensity for
twenty-two hours every day; her epidural injections partially
relieved the pain for a few months, and the MS Contin 30 mg 1

q.8h and Soma 350 mg. one t.i.d. also partially helped relieve
the pain; however, prolonged sitting caused her pain to worsen,
and a supine position relieved it. Plaintiff claimed to be unable
to do housework or yard work because of back pain. The treating
doctor referred to a CT scan of the lumbar spine on February 20,
2002, that had shown status post right-sided laminectomy at L4-
L5, mild to moderate lumbar canal stenosis and bilateral
foraminal stenosis, a vacuum within the epidural space on the
right side of L5-S1 that could represent a large right-sided disc
herniation or a synovial cyst associated with the facet joint,
resulting in moderate to severe central canal stenosis and severe
right-sided foraminal stenosis; and mild to moderate canal
stenosis at L2-L3 and L4-L5 secondary to bulging discs and facet
hypertrophy. (Tr. 292.) Lumbar flexion was 60 degrees, limited by
back pain; extension and lateral flexion were normal; sensory
exam was normal in both lower extremities. There was tenderness
to palpation over the right and left lumbar spine. The impression
was post lumbar laminectomy pain, chronic, progressive, requiring
injections as well as high doses of pain medications to be
functional to carry out her usual daily tasks. Current medication
was to be continued. (Id.)

    Based on her history and the examination, Dr. Tran
recommended that she be restricted from activities involving
frequent fingering and grasping of objects, activities involving
lifting or carrying objects of more than ten pounds occasionally
or frequently, frequent motions of the (mostly left) wrists,
frequent bending, stooping, crouching, and activities involving
reaching over the head; prolonged standing or walking more than a

1  total of four hours per day; with a need to alternate sitting and
2  standing to relieve the back pain. She was not restricted with
3  respect to climbing or balancing, per se, and did not need an
4  assistive device to ambulate. (Tr. 292-93.)

5          C. <u>Analysis of the ALJ's Decision</u>

6          The ALJ noted that Plaintiff claimed that her back symptoms
7  had worsened over time after a back surgery, and she felt like
8  she had arthritis. She claimed to have been dropping things and
9  to have experienced her left arm falling asleep for five years.
10 She claimed that she forgot things because of a head injury
11 sustained at age twenty-five. She had been attending a pain
12 management center for five years, taking Morphine and Soma for
13 years, having epidural injections that provided temporary pain
14 relief, and taking hot baths. She lay down four to five times a
15 day for an hour at a time because lying down relieved her back
16 pain. She claimed that she had difficulty getting out of bed in
17 the morning because of pain, and that damp weather also worsened
18 her pain. (Tr. 16.) It is thus clear that the ALJ identified and
19 considered Plaintiff's subjective complaints.

20         The ALJ found that the nature, onset, duration, frequency,
21 radiation, and intensity of Plaintiff's limitations were not
22 corroborated by the objective evidence to the degree alleged.
23 (Tr. 16.)

24         With respect to her back pain, he noted her history of a
25 lumbar laminectomy in 1997 and subsequent epidural injections
26 beginning in 2000. (<u>Id.</u>) He stated that her medications provided
27 good relief of her back pain; her treating physician had not
28 recommended further back surgery or use of an assistive device;

the most recent x-ray of the lumbar spine showed degenerative

changes but no evidence of recurrence of her prior injury; and

her treating physician's report of significant limitations was

not given controlling weight because they appeared to be out of

proportion to the objective evidence. (Tr. 16.)

An ALJ may rely on the conservative nature of treatment or a

lack of treatment in rejecting a claimant's subjective complaint

of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir.

1995). The record provides support for a conclusion that

medication controlled Plaintiff's pain. Plaintiff testified that

the epidural injections really brought the pain level down,

worked well, helped a lot, and lasted five or six months; she

last had them several years previously and had recently been told

that if she obtained insurance, she could once again have an

injection. (Tr. 308-10.) She had been advised to stay on her pain

medications, Soma and morphine sulfate, every eight hours because

there would be some problems with stopping. (Tr. 310.) She

admitted that she had good days and bad days with her pain, which

varied depending on the dampness of the weather and where she had

"hot spots" that she attributed to removed silicone breast

implants. (Tr. 311-12.)

In summary, Plaintiff continued with her medications for

years despite what was claimed to be disabling pain, and yet no

treatment beyond the palliative medications was recommended;

further, her treaters noted the relative efficacy of her

medications in treating the pain. (Tr. 232, 256-59.) See Odle v.

Heckler, 707 F.2d 439, 440 (9th Cir. 1983). The ALJ was entitled

to interpret the record as showing that Plaintiff sought renewals

of her pain medication, with or without injections, and not any
additional treatment for her pain.

The record supported the finding that relatively
conservative treatment had been recommended. Plaintiff testified
that a Dr. Levin, whom she had seen a couple of years before the
hearing, had told her that according to the x-rays, the next
surgery would be one where they would go in from the front and
put in hardware to stabilize things; he said it was for the day
when she could not get up any more, and it would be the "next
recommendation." (Tr. 303-04.) She had not had the surgery
because it would be very major, would involve opening her up from
the front and the back, and was a last resort to which she would
prefer a wheelchair. (Tr. 310.)

The record substantiates the ALJ's conclusion that the
treating doctor's limitations were out of proportion to the
objective medical evidence. Although there were objective indicia
of disc disease, the treating physician's findings upon
examination were relatively limited, with tenderness to palpation
and some limitation of bending being the primary symptoms noted.
It is appropriate for an ALJ to consider the absence of
supporting findings, and the inconsistency of conclusions with
the physician's own findings, in rejecting a physician's opinion.
Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995);
Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992);
Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A
conclusional opinion that is unsubstantiated by relevant medical
documentation may be rejected. See Johnson v. Shalala, 60 F.3d
1428, 1432-33 (9th Cir. 1995). The fact that an opinion is based

primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ thus appropriately rejected the extent of limitations claimed by Plaintiff and imposed by Plaintiff's treating physician because, in part, they were unsupported by objective medical evidence. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999). Although there was evidence tending to show that Plaintiff suffered some symptoms that could have produced the types of symptoms of which she complained, the record nevertheless contained substantial evidence supporting the ALJ's findings.

In regard to Plaintiff's claimed disability from CTS, the ALJ noted that there was little evidence regarding this complaint following Plaintiff's March 2001 CTS release surgery on her right dominant wrist; progress notes following surgery showed that the procedure was successful and provided Plaintiff great relief, including recovered sensation. The ALJ noted that there was little evidence that the left wrist CTS shown by pre-surgery nerve conduction studies continued to bother Plaintiff after her right wrist surgery; Plaintiff did not allege any limitations relative to her wrist when evaluated by Dr. Rios in January 2003, and her grip strength on examination was described as bilaterally

strong and normal; and her treating source's records consistently referred to a history of bilateral CTS with no active findings on examination. The ALJ expressly afforded little weight to the report of Dr. Tran, a treating physician, that there were significant limitations because it was not supported by his physical findings, such as testing range of motion and strength for both wrists, which was within normal limits. (Tr. 17.)

The record supports the ALJ's characterization of the medical evidence. Dr. Tran noted a history of pain, parasthesia, and numbness in the right hand, a diagnosis of right and left CTS five years before the exam on March 25, 2004, and Plaintiff's report of having had symptoms in the left hand for several years and present difficulty with grasping objects in the left hand. (Tr. 292.) Yet, examination revealed only decreased sensation in the left hand; nevertheless, muscle strength was 5/5 for the upper extremities, grasping strength was 5-/5 bilaterally, there were negative Tinel and Phalen's tests for both wrists, and no evidence indicated muscle atrophy in either hand. (Tr. 292.) Her treating physicians' notes indicate a history of bilateral CTS, as distinct from active symptoms, or do not mention CTS. (Tr. 263, 262, 261, 260, 259, 257, 256, 233, 232, 231.) Plaintiff complained of numbness in her left arm and fingers in September 2000 and pain in both wrists and fingers in August 2000, but upon examination she had strength of 4/5 in both hands by hand grip. (Tr. 163, 167, 177-78.) In November 2000, she reported that the right wrist pain was worse than the left; grip strength bilaterally was 4/5, sensation to pinprick was intact in the upper extremities, but Phalen's test for pain in the right hand

was positive, and Tinel's test for paresthesia and pain in the right hand and fingers was also positive. (Tr. 175-6.) In December 2000, she complained of only right CTS at an annual physical. (Tr. 157.) Dr. Albert R. Swafford, an orthopedic surgeon, opined on January 18, 2001 that Plaintiff had significant bilateral CTS, with normal thenar strength but numbness in her hands in the median nerve distribution all the time. Carpal tunnel decompression was recommended, with the doctor intending to do the right side, which was more symptomatic, first, followed by the left in stage settings. (Tr. 200.) In February 2001, Plaintiff reported only right CTS to her treating physician, and the diagnosis was right CTS. (Tr. 174.) Post-surgery notes in April 2001 revealed complete healing of the right wrist and great relief, with good sensation recovery. (Tr., 193.)

Likewise, the record supports the ALJ's finding that Plaintiff did not complain of any symptoms of CTS to Dr. Rios when examined in January 2003. Similarly, the record confirms that examination showed preserved motor strength of all extremities of 5/5, bulk and tone symmetric and normal, and grip strength bilaterally strong and normal. (Tr. 247-250.)

Thus, the Court concludes that substantial evidence supported the ALJ's findings regarding Plaintiff's CTS. It was appropriate for the ALJ to examine any inconsistencies in Plaintiff's claim and to make a determination regarding whether Plaintiff's claims were believable. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). In rejecting testimony regarding subjective symptoms, permissible grounds include conflicts

between the claimant's testimony and conduct, or internal contradictions in the testimony. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).

The ALJ noted Plaintiff's claim of inability to perform any sustained work activity due to pain associated with her combined impairments; however, she admitted that she could drive without restriction, cook, and do laundry; she reported independence in her activities of daily living to Dr. Rios; and her present application for disability was her fifth application. (Tr. 17.)

The ALJ properly considered Plaintiff's daily activities. A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

Substantial evidence supports the finding that Plaintiff's activities of daily living were inconsistent with her claims of debilitating symptoms. She testified that she lived with her husband, who had been disabled and on worker's compensation for several years from a broken leg, and she did the housecleaning and cooking. She did laundry with some help from her husband, and an eleven-year-old little girl whom Plaintiff and her husband "unofficially" took care of helped out a lot. Plaintiff admitted that she could drive. (Tr. 299, 307-08.)

The Court thus concludes that substantial evidence supported

the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with her claim of disabling pain.

In summary, the Court concludes that although there might have been factors supporting Plaintiff's credibility, the ALJ nevertheless articulated clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of pain. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

III. Evaluation of Impairments and Treating Physician's Opinion

Plaintiff complains that the ALJ failed to evaluate how all Plaintiff's impairments combined to affect her RFC. Specifically, he erred in concluding that Plaintiff's bilateral CTS was not severe. The basis for Plaintiff's argument is that "there is more than substantial evidence to support a finding of a severe impairment as a result of the bilateral carpal tunnel syndrome." (Brief at 11.)

Plaintiff does not detail that evidence or explain how it compels the conclusion that Plaintiff's CTS was severe. Further, Plaintiff's premise is fundamentally flawed. The standard for this Court to follow is not whether the record could be interpreted to constitute substantial evidence in support of a finding that Plaintiff wants the ALJ to have made; rather, as previously detailed, the questions for this Court to determine upon review are whether the ALJ's finding was made according to appropriate legal standards, and whether it was supported by substantial evidence. To the extent that medical evidence is inconsistent or conflicting, it is the responsibility of the ALJ

1 to resolve any conflicts. <u>Morgan v. Commissioner</u>, 169 F.3d 595,

2 603 (9th Cir. 1999); <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir.

3 1996); <u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016,

4 1020 (9th Cir. 1992).

5     An impairment is severe if it significantly limits a

6 claimant's ability to do basic work activities. 20 C.F.R. §

7 416.920(c) (2004). An impairment will be found not severe when

8 medical evidence establishes only a slight abnormality or a

9 combination of slight abnormalities which would have no more than

10 a minimal effect on an individual's ability to work. Basic work

11 activities are abilities and aptitudes necessary to do most jobs,

12 including, for example, physical activities such as walking,

13 standing, sitting, lifting, pushing, pulling, reaching, carrying

14 or handling; capacities for seeing, hearing, and speaking;

15 understanding, carrying out, and remembering simple instructions;

16 use of judgment; responding appropriately to supervision, co-

17 workers, and usual work situations; and dealing with changes in a

18 routine work setting. 20 C.F.R. §§ 404.1520(c), 404.1521(a);

19 416.920, 416.921(b) (2002); Soc. Sec. Ruling 85-28; <u>Smolen v.</u>

20 <u>Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

21     Here, the ALJ concluded that Plaintiff's history of

22 bilateral CTS, status post right wrist surgery in March 2001, was

23 not severe. (Tr. 13.) He detailed her complaints in 2000 and the

24 prescription of a wrist splint; her taking excess pain

25 medication; the successful surgery on the right wrist in 2001;

26 the state agency consultant's opinion in connection with a prior

27 application that her lifting and carrying capacity was for medium

28 work, with limited pushing and pulling, and avoidance of frequent

22

forceful grasping and twisting with both hands (opinion of June 16, 2001, Tr. 205-19); her failure to report any CTS symptoms to Dr. Rios in 2003, and his findings of bilateral strong and normal grip; and the opinion of a state agency medical consultant in connection with the present application that she was capable of medium exertion (lifting and carrying fifty pounds occasionally and twenty-five pounds frequently) with only occasional climbing or stooping (opinions in March and June 2003, Tr. 276-85). (Tr. 14-15.) The ALJ concluded that because her CTS symptoms had apparently resolved, no other restrictions were noted, and thus Plaintiff could perform her past relevant work as a deli clerk. (Tr. 14-15.)

Plaintiff specifically challenges the ALJ's giving little weight to the opinion of the treating physician, Dr. Tran, dated March 25, 2004, to the effect that Plaintiff should be restricted from frequent fingering and grasping and frequent motions of the wrists (primarily the left). (Tr. 15.)

The ALJ noted that although there had been no mention of continuing CTS complaints since the 2001 right wrist release, Dr. Tran suggested that Plaintiff had actually continued to suffer from complaints regarding the left wrist but had been unable to have a second surgery because of lack of insurance. The ALJ noted that on examination, sensation in the left hand was decreased but was otherwise normal; grasping was within normal limits bilaterally, and Tinel and Phalen signs were negative bilaterally; there was no evidence of muscle atrophy in either hand; and what decrease in strength Plaintiff suffered in both hands was mostly from pain, whereas the exam findings suggested

23

no more than a slight limitation in grasping because of bilateral

strength of 5-/5. (Tr. 15, 292-93.)

The ALJ concluded that the restrictions were not supported

by the physical findings regarding the range of motion and

strength; they seemed to be based quite heavily on the claimant's

subjective complaints of pain. (Tr. 15.) Substantial evidence

supports this finding. An ALJ may disregard a treating

physician's opinion that is controverted by other opinions only

by setting forth specific, legitimate reasons for doing so that

are based on substantial evidence in the record. Rodriguez v.

Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by

stating a detailed and thorough summary of the facts and

conflicting clinical evidence, stating the interpretation of the

evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403,

1408 (9th Cir 1986). It is appropriate for an ALJ to consider the

absence of supporting findings, and the inconsistency of

conclusions with the physician's own findings, in rejecting a

physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33

(9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th

Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

1989). Further, the fact that an opinion is based primarily on

the patient's subjective complaints may be properly considered.

Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th

Cir. 1992). Where a treating source's opinion is based largely on

the Plaintiff's own subjective description of his or her

symptoms, and the ALJ has discredited the Plaintiff's claim as to

those subjective symptoms, the ALJ may reject the treating

source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.

1989).

The Court concludes that the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the treating physician's opinion concerning the severity of Plaintiff's CTS.

Plaintiff argues that the state agency physician in 2001 (shortly after the CTS surgery on the right wrist) imposed limitations on pushing and pulling and avoidance of frequent forceful grasping and twisting with both hands. (Tr. 206, 208.) The ALJ noted that assessment and yet relied on the more recent state agency opinion to the effect that since Plaintiff's CTS symptoms had apparently resolved, no further restrictions were required, and Plaintiff was capable of performing her past relevant work. (Tr. 14-15, 277, 279.) The ALJ gave specific, legitimate reasons for putting greater weight on the consulting examiner's findings and opinion and the later opinion of the state agency consultant. Substantial evidence supports his determination that the medical record indicated resolution of any CTS problem due to an absence of complaints.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of

the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041
(9th Cir. 1995). The opinion of a nontreating, nonexamining
physician can amount to substantial evidence as long as it is
supported by other evidence in the record. <u>Andrews v. Shalala</u>, 53
F.3d 1035, 1041 (9th Cir. 1995).

Dr. Rios imposed no restrictions with respect to Plaintiff's
CTS, although he examined Plaintiff and made findings with regard
to the upper extremities, including preserved motor strength of
5/5, symmetric bulk and tone, bilateral normal and strong grip
strength, and an absence of any evidence of a focal sensory
deficit. The ALJ was entitled to rely on Plaintiff's failure to
report any subjective symptoms, as well as the absence of any
objective symptoms, in concluding that the opinions of disabling
or restricting CTS were not entitled to weight.

DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's
decision was supported by substantial evidence in the record as a
whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision
of the Defendant Commissioner of Social Security and DENIES
Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for
Defendant Jo Anne B. Barnhart, Commissioner of Social Security,
and against Plaintiff LYNNE M. CULLA.

IT IS SO ORDERED.

**Dated:    March 27, 2006**          **/s/ Sandra M. Snyder**
icido3                          UNITED STATES MAGISTRATE JUDGE